SELIGMANN v. SONKA.   (No. 5601.)*

(Court of Civil Appeals of Texas. San Antonio. Jan. 26, 1916. Rehearing Denied Feb. 23, 1916.)

1. INDEMNITY ⬅15—LIABILITIES OF TENANT —INJURY TO PROPERTY—ACTION—PLEADING.

A petition alleging that plaintiff consented to defendant's occupancy of a shed on condition that in case of loss by fire defendant would be responsible, and that the defendant then promised that he would be responsible for such damage, and that, relying on that promise, plaintiff consented to the use of the shed, and that the use was a valuable right, shows a good cause of action based on the special contract of the tenant to indemnify the landlord in case of loss by fire, since it sufficiently alleges the contract.

[Ed. Note.—For other cases, see Indemnity, Cent. Dig. §§ 36–40, 42–47; Dec. Dig. ⬅15.]

2. INDEMNITY ⬅3—CONTRACT — CONSIDERATION—SUFFICIENCY.

Where plaintiff permitted the defendant to use a building of his temporarily for the purpose of drying cotton, and the defendant agreed to indemnify him in case of loss by fire, the fact that the liability greatly exceeded the value of the use of the building did not vitiate the contract, since the liability was remote and contingent, and the use present and certain.

[Ed. Note.—For other cases, see Indemnity, Cent. Dig. §§ 2–6; Dec. Dig. ⬅3.]

3. INDEMNITY ⬅15—CONTRACT—EVIDENCE.

Evidence *held* to show that a tenant using a building with the permission of the landlord entered into a special contract to indemnify the landlord for loss in case of fire.

[Ed. Note.—For other cases, see Indemnity, Cent. Dig. §§ 36–40, 42–47; Dec. Dig. ⬅15.]

Appeal from District Court, Guadalupe County; M. Kennon, Judge.

---

Action by Joseph Sonka against Julius Seligmann. Judgment for plaintiff, and defendant appeals. Affirmed.

Greenwood & Short and Dibrell & Mosheim, all of Seguin, for appellant. Terrell, Walthall & Terrell, of San Antonio, and H. M. Wurzbach, of Seguin, for appellee.

CARL, J. Joseph Sonka sued Julius Seligmann in the district court of Guadalupe county for the sum of $2,194, with 6 per cent. interest thereon from March 7, 1914, and, upon findings in response to special issues, judgment was entered in favor of Sonka for $1,067, from which judgment this appeal is prosecuted.

The gist of the cause of action is set forth in the following part of the petition:

"That some time in the latter part of February, and prior to the 7th day of March, 1914, the defendant, Julius Seligmann, came to this plaintiff and asked his permission to use a building owned by plaintiff to pick some damaged cotton which the said Seligmann had purchased. Plaintiff refused to grant said permission, stating that he was afraid that said cotton might catch fire and the building be destroyed. Defendant then asked for the use of the shed for said purpose, and plaintiff agreed to the use by defendant of same, on condition and for no other consideration than that, should said property catch fire and destroy the warehouse, shed, and other property above described, or certain of said property, defendant would be responsible therefor, and said Seligmann then and there told and promised this plaintiff that he, the said Seligmann, would be responsible for all damage that might be sustained by reason thereof, and that, relying on said promise and agreement on the part of the said Seligmann, this plaintiff consented for him to use the said shed; that the right to use said shed was a valuable right at said time and place, and said Seligmann, by his promise to be responsible for any damage that might be occasioned to any of the above described property by reason of fire, became liable and bound himself to pay to the said Sonka, in the event of the injury and destruction of the said premises and property by fire, the reasonable value thereof."

It was also alleged that the defendant was negligent in failing to select reasonably safe, prudent, and responsible employés to do and perform his work and in failing to supervise the work of such employés, so as to guard against the happening of fire. The defendant directed a general demurrer at this cause of action, the overruling of which is made the basis of the first assignment of error.

[1, 2] Appellant contends that the allegations show no definite contract or agreement to become responsible in case the shed should be destroyed by fire; and because it was not alleged to have been within the contemplation of the parties that the responsibility was as far-reaching as claimed in this case. In other words, the responsibility assumed was too indefinite. In a proposition subjoined to this assignment it is asserted that the consideration is so inadequate and out of proportion to the responsibility alleged to have been undertaken as to make the contract unenforceable, and that a contract is not established until it is shown that the minds of

the contracting parties met in an agreement. This petition shows unquestionably that the parties agreed that for the use of the building appellant undertook and agreed to become responsible for the loss of the building by fire while he was using it. The damage accruing may have been out of proportion to the benefits he received, but he so contracted. The value of the use of the building was doubtless relatively very small. It is so as between the premium paid on an insurance policy and the loss occasioned by a fire. But the use was a certain present value, while the liability for loss by fire was remote and contingent, just as in the case of a fire insurance company, which for a small sum undertakes to insure the owner against loss by fire. If the amount of the policy were a certain fixed liability, the premium would be out of all proportion. But it is evidently considered between the parties that the certain value given is equal in value to the contingent liability, in case of fire. Appellant received the use of the building, for which he was to pay nothing, except in case of loss by fire. This contingency unfortunately happened, and when it did happen there is no more reason to say that the consideration was inadequate than there would be for contending that an insurance company should not be held liable, in case of fire, because the premium paid was out of proportion to the liability claimed. Appellant could probably have obtained insurance against loss by fire for what the use of the building was worth. We are of the opinion that the petition stated a good cause of action, and the assignment is overruled.

[3] And the court did not err in refusing to instruct a verdict for the defendant, "because plaintiff's statement of the contract or agreement upon which the cause of action was based did not show any contract or agreement between plaintiff and defendant whereby defendant obligated himself to pay plaintiff the value of all property destroyed by fire," etc. The substance of the plaintiff's testimony on this matter is:

"I told him [Seligmann] that it is a costly building [the dance hall]. I wouldn't lease for a purpose like that; then we went over to the building and looked at it, and then went out and went up to the house. Then I told him I got a shed there; just at present I haven't got any use for it. If you want it, you can get that; but I am scared on account of fire. I don't carry any insurance. He said: 'Yes, but don't be scared about that. I will guarantee it to you for any damage.' Then we went across the street, and went over the shed, looked at the shed, and he just says: 'You got plenty of room here, if you want to store something in it; it is plenty room. I just want to store a couple of bales of cotton in it, and carry it in the sun and dry it; take it out in the sun and dry it. It won't be no danger because the cotton is wet.' And that was all. * * * Then I suggested to him the use of the shed. In regard to the rent, I told him I wouldn't charge him anything if he would take care of it; I wouldn't charge him any rent at all. I would make it for accommodation. Before the shed was rented, and right inside of the yard, back of the saloon, the con-

versation took place, wherein Mr. Seligmann agreed to guarantee me against damage by fire."

Again:

"I would let you have the shed for the cotton, but I am scared on account of fire. I did tell him that I would not let him have the hall, or the pavilion, because it was occupied as a storeroom, and because I was afraid of fire. I wouldn't let him have no hall, because it is danger, a building like that, for that kind of stuff. I said, 'I am afraid on account of fire; I wouldn't let you have it;' and he said, 'Joe, don't be scared; I will guarantee to you any damage.' That is all that was said about fire, or a guaranty. When we got down to the shed, and Mr. Seligmann looked at it, he says, 'I don't bring much cotton in here; it won't take much space;' and he asked me for the roofing. I had the roofing piled up. He said, 'I will put it under the cotton.' He just took a little space. There was a space of about 20 by 30. He could place about 7 or 8 bales on that space. He just wanted space for 7 or 8 bales."

Appellee was corroborated by other testimony as to the contract, and, even if he had not been, the finding of the jury is conclusive that the contract was made. Hugh Ramage testified:

"Mr. Sonka spoke about fire while they were talking there, and Mr. Seligmann replied: 'That's all right, Joe; I will be responsible for that.' That was before Seligmann took possession of the shed, and before any cotton had been hauled there. Mr. Seligmann told Mr. Sonka in my hearing that he would be responsible for fire. He said, 'Joe, I will take care of that.' * * * 'That shed is over there; yes, there is the old shed over there;' and they walked over there. Mr. Sonka said, 'It will be a better place for drying the cotton, and I won't charge you any rent, but you will be responsible for fire;' and Mr. Seligmann said, 'Don't worry, Joe; I will take care of that.'"

There is no merit in any of appellant's assignments, and they are overruled. The contract was not only sufficiently alleged, but was established by competent evidence. There was sufficient consideration, and, considering the character of liability incurred, the benefits received were not out of proportion to the obligation assumed.

The judgment is affirmed.